IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER ELEVEN |
| | : | |
| MACHNE MENACHEM, INC. | : | BANKRUPTCY NO.: 5-01-04926 |
| | : | {**Nature of Proceeding**: Amended |
| | : | Disclosure Statement and Amended Plan |
| DEBTOR | : | of Reorganization filed by Yaakov Spritzer} |

FILED
WILKES-BARRE
JUL 29 2003
Clerk, U.S. Bankruptcy Court

# OPINION[1]

Yaakov Spritzer ("Spritzer") presented an Amended Disclosure Statement and Amended Plan of Reorganization to this Court seeking confirmation. For the reasons stated below, Spritzer's Plan is not confirmed.

### BACKGROUND

Machne Menachem, Inc. ("Debtor") is a not-for-profit corporation organized on July 21, 1995 under the laws of the State of New York. Debtor owns land in Lackawaxen, Pennsylvania, which it uses to operate a summer camp for boys of the Hasidic faith residing in the Crown Heights community in Brooklyn, New York.

Debtor has suffered a hard and arduous existence at the hands of its Board of Directors, prior to finding its way into this Court. Debtor's Board of Directors consisted of Mendel Hershkop, Shmuel Heber, Yaakov Spritzer, and Yosef Goldman and had no members. The creation of the Board appears to be one of the few procedures actually

---

[1] Drafted with the assistance of Wendy E. Morris, Law Clerk.

[m:\users\cathy\wp8docs\opinions\Machne Menachem.wpd]

followed under New York's not-for-profit laws. The Board did not adopt by-laws at Debtor's inception and held only one formal board meeting.

Following Debtor's creation, Spritzer operated Debtor, without the Board's approval, in a maverick fashion with the aid of Meir Aaron Schreiber ("Schreiber") and an individual referred to as 'Spalter'. During this period, Spritzer managed Debtor's operations and unilaterally appointed Spalter and Schreiber as directors and/or officers. Spritzer also used his personal funds to subsidize Debtor's existence. Although Spritzer claims board meetings were held with this 'new' board, records were not produced evidencing such.

On May 6, 1997, Spritzer filed suit in the Eastern District of New York against the inactive directors—Mendel Hershkop, Shmuel Heber, and Yosef Goldman—and other defendants alleging violations of the Racketeering Influenced and Corrupt Organization Act and various tort claims on behalf of Debtor.[2] Prior to the resolution of the matter in the District Court, Spritzer initiated Debtor's Chapter 11 filing in the Middle District of Pennsylvania on December 6, 2001. After the automatic stay was lifted, Judge I. Leo Glasser of the Eastern District of New York concluded that the inactive directors were still on Debtor's board. See 237 F.Supp. at 242. Following Judge Glasser's opinion, a

---

[2] At Spritzer's direction, Debtor filed suit against seven (7) defendants alleging violation of Racketeering Influenced and Corrupt Organization Act, tortious interference with contractual relations, fraud, conversion, unfair competition, breach of fiduciary duty, assault and intentional damages to property. Further background on the matters leading up to this bankruptcy case can be found at: Machne Menachem, Inc. v. Hershkop, 2003 WL 1193528 (E.D.N.Y. January 31, 2003); Machne Menachem, Inc. v. Hershkop, 237 F. Supp.2d 227 (E.D.N.Y. 2002); Machne Menachem, Inc. v. Hershkop, 2001 WL 984943 (E.D.N.Y. June 24, 2001); Machne Menachem, Inc. v. Hershkop, 1999 WL 438471 (E.D.N.Y. May 12, 1999); Machne Menachem, Inc. v. Hershkop, 1998 WL 564541 (E.D.N.Y. July 17, 1998).

[m:\users\cathy\wp8docs\opinions\Machne Menachem.wpd]    2

special meeting of the Board of Directors was held and Spritzer was removed from the Board.

In an attempt to expedite the confirmation process, Debtor, now under the control of the reinstated directors, and Spritzer, as a principal creditor, elected to pursue confirmation on a 'fast' track. On May 16, 2003, both Spritzer and Debtor filed amended versions of previous plans of reorganization and disclosure statements. Orders conditionally approving the disclosure statements and fixing the last day for filing acceptances, rejections, and objections to the respected amended plans were entered on May 19 and 20, 2003.

Spritzer's amended plan requires him to either refinance the mortgage on Debtor's property or obtain a loan secured by a mortgage on the camp's real estate for $600,000.00 within 120 days of the plan's effective date. The proceeds from either transaction will be distributed to claims excluding those subject to subordination such as claims held by Spritzer or individuals related or associated with him. Any remaining balance on un-subordinated claims will be paid in full from Debtor's operations, with no interest, over various periods of time. Payment on the subordinated claims will commence two (2) years after the plan's effective date.

Debtor and the United States, on behalf of the Internal Revenue Service, objected to Spritzer's amended plan. The United States objected under 11 U.S.C. § 1129(a)(9) with respect to the plan's treatment of a priority IRS tax claim and Debtor's failure to file tax returns.

[m:\users\cathy\wp8docs\opinions\Machne Menachem.wpd]   3

Case 5:01-bk-04926-JJT    Doc 191    Filed 07/29/03    Entered 07/29/03 14:44:00    Desc
Main Document    Page 3 of 10

Spritzer's amended plan was accepted by all its classes. Spritzer's *Report on Ballots* states that the IRS' objection would be addressed via a modification to the plan, by agreement with the United States Attorney's Office. (Doc. 172 at 3). Spritzer has not yet filed a plan modification revising its treatment of the IRS priority claim.

Debtor's second amended plan was rejected by its creditors and subsequently withdrawn.

A confirmation hearing concerning Spritzer's amended plan and disclosure statement was held on June 9, 2003 and both Debtor and Spritzer filed post-hearing briefs. Oral argument was subsequently held on June 17, 2003. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and this Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 to render this decision.

## DISCUSSION

The plan has secured the overwhelming support of creditors. It further enjoys the widespread support of the Hasidic community. What places the issue of confirmation squarely on the horns of a dilemma is compliance with the provisions of § 1123(a)(7) which requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with *public policy* with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." (emphasis added). It is this issue of "public policy" that causes me to question Spritzer's compliance with § 1129.

Little has been written on § 1123(a)(7). Its language appears to originate in §

216(11) of the Bankruptcy Act and it is to that legislative history to which I turn for guidance in resolving the ambiguous parameters of the term "public policy". As referenced in Collier's Treatise,

> The Senate Report accompanying the Chandler Act stated with respect to Section 216(11) that such provision "directs the scrutiny of the court to the methods by which the management of the reorganized corporation is to be chosen, so as to ensure, for example, adequate representation of those whose investments are involved in the reorganization." The provision was originally suggested by the Securities and Exchange Commission and was intended to make certain that discredited management will not be perpetuated, and that provision will be carried in the plan for the selection--at least for the mechanics or means of selecting the managements which will carry forward the reorganization in the interest of the parties.

Collier on Bankruptcy, § 1123(a)(7), n 14 & 15 (15th ed. rev'd 2003)(citing S. Rep. No. 1916, 75th Cong., 3d Sess. 35 (1938); Hearings on H.R. 6439, 75th Cong., 1st Sess. 143 (1937); see also S.E.C. Report on the Study and Investigation of the Work, Activities, Personnel and Function of Protective and Reorganization Committees (1937-1939); accord In re Mahoney, 80 B.R. 197, 201 (Bankr. S.D. Cal. 1987) (finding meaning of §1123(a)(7) "far from clear" and that "former § 216(11) was not itself a model of clarity.")

The various public policies of a state are "found in its constitution, acts of the legislature, and decisions of its courts." Building Service Employees Intern. Union, Local 262 v. Gazzam, 339 U.S. 532, 537-38 (1950). Machne Menachem is a not-for-profit corporation organized and existing under the laws of the State of New York. The State of New York codified its public policy concerning the selection and removal of directors in its Not-For-Profit Corporation Law. See N.Y. Not-for-Profit Corp. Law § 101, et al (McKinney 2003)(hereinafter "NFP"). Although the NFP allows directors to be either elected or appointed pursuant to the by-laws, they can only be removed by the vote of the members, directors, or New York's Attorney General through a judicial

proceeding. See NFP §§ 613 (Vote of Members), 703 (Election and term of office of directors; alternates), 706 (Removal of Directors). I find the removal or selection of Debtor's directors in a manner contrary to New York's public policy, as codified in its NFP, would directly violate §§ 1123(a)(7) and 1129(a)(1) and (2) of the Bankruptcy Code.

Spritzer's plan replaces the existing Board of Director's of the Debtor with a three person Board including Spritzer, his son-in-law, Rabbi Shloime Rutman, and Meir Schreiber, a supporter. Although Spritzer had been a Board member of the prepetition Debtor, he has subsequently been removed. New York not-for-profit law specifies the manner of replacing the board by vote of the membership or vote of the directors or action of the state attorney general. NFP § 706. Replacement by bankruptcy reorganization is apparently not anticipated by the New York statute. Regardless of that fact, in 1984 the Bankruptcy Code was amended to provide the plan shall include certain requirements "notwithstanding any otherwise applicable nonbankruptcy law . . . ." 11 U.S.C. § 1123(a).

If "public policy" requires compliance with New York corporate law then, clearly, the plan's wholesale replacement of the Board of Directors exercises an option unavailable under that law and presumably against traditional concepts of "public policy." "Public policy" may also allude to a concern that this Debtor should not be reorganized under the direction of an individual that was severely chastised for failure to abide with statutory requirements in administering the prepetition debtor by Judge

Glasser in related litigation. <u>Machne Menachem, Inc. v. Hershkop</u>, 237 F.Supp. 2d 227 (E.D.N.Y. 2002).

Considering the hostile relationship between the current Board and Spritzer, it is unlikely that the current Board would voluntarily remove themselves or resign in order to permit Spritzer to once again exercise control over the Debtor. Furthermore, this Court has not been made aware of any judicial proceeding commenced by New York's Attorney General concerning the removal of the current Board members by judicial means.

I am cognizant that overriding shareholder's rights has been seen as a legitimate option to allow management to pursue a reorganization plan, <u>In re Acequia, Inc.</u>, 787 F.2d 1352, 1363 (9th Cir.1986), <u>In re Pittsburgh Terminal Coal Corp.</u>, 183 F.2d 520 (3d Cir.1950), <u>cert</u>. <u>denied</u>, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950), and that reorganization plans have been used as a means to judicially 'take-over' a corporate debtor. <u>See</u> e.g. <u>In re Internet Navigator, Inc.</u>, 289 B.R. 128 (Bankr. N.D. Iowa 2003). However, the same rationale does not apply in this situation.

Unlike a traditional 'take-over' involving the acquisition of a majority of the voting rights (stock) of a corporation in order to 'vote the stock' and elect a new board pursuant to the corporation's by-laws, the same should not apply to a not-for-profit corporation organized under a statutory scheme permitting corporate control to vest in a board of directors and prohibiting the use of shareholders. <u>See</u> NFP § 501.

In the case of the Debtor, there are no 'shares' that Spritzer could control and

thereby vote in order to remove the current directors. Nor does Debtor have any members comprising a body of electors vested with the power to select and remove directors. Only Debtor's Board of Directors holds this power and it can only be wrestled away through statutorily approved methods of selecting and removing directors under New York's NFP.

Undoubtedly, Yaakov Spritzer is attempting to circumvent New York Not-For-Profit Corporation Law in endeavoring to replace the Board of Directors with his hand-picked successors. Should I confirm this plan, that attempt would, indeed, be successful. Despite Spritzer's suggestion, this Court will not utilize § 105 of the Code to override an express provision in the Code requiring compliance with public policy in the method of selecting Debtor's directors. See generally In re Hechinger Investment Co. of Del., 298 F.3d 219, 228 (3d Cir. 2002).

I cannot be ambivalent toward the fact that Yaakov Spritzer is a creditor of some magnitude who has shown a willingness and an ability to guarantee and/or fund the considerable sums needed to return this camp to solvency. This camp is of noble purpose, offering what appears to be a splendid environment to the children of the Crown Heights, Brooklyn Hasidic community and this plan, having the support of its secured and unsecured creditors as well as its community, stands a legitimate chance of consummation. The expeditious reopening of this camp would certainly be in the public interest.

Notwithstanding, this Court finds that the plan violates 11 U.S.C. § 1123(a)(7),

requiring compliance with public policy with regard to selecting and removing directors, and runs afoul of New York statute. Additional analysis of Spritzer's argument under NFP § 1102 is futile.[3]

An Order will follow.

BY THE COURT

**JOHN J. THOMAS**
Chief United States Bankruptcy Judge

WILKES-BARRE, PENNSYLVANIA

DATED: July 29 2003

---

[3]Spritzer's argument that Section 1102 of New York's NFP addresses removal of directors is misplaced. Section 1102, titled *Judicial dissolution; petition by directors or members; petition in case of deadlock among directors or members*, concerns when a board of directors or the corporation's members can petition a court to judicially dissolve the corporate entity. It does not directly state, nor imply, that it can be used to remove directors. Nothing in the section, nor cases reviewed by this Court, suggests a purpose contrary to its unambiguous language. Moreover, any request to judicially dissolve a not-for-profit requires the state's attorney general to be a named party in the proceeding. Section 1102 does not help Spritzer advance his position.

[m:\users\cathy\wp8docs\opinions\Machne Menachem.wpd]    9

# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

## CERTIFICATE OF MAILING

The undersigned hereby certifies that a copy of this document was mailed today to the parties named below at their respective addresses as shown below.

RONALD SANTORA, ESQUIRE
HOURIGAN, KLUGER & QUINN, P.C.
600 THIRD AVENUE
KINGSTON, PA 18704

EUGENE C. KELLEY, ESQUIRE
HOEGEN, HOEGEN & KELLEY
152 SOUTH FRANKLIN STREET
WILKES-BARRE, PA 18703-0346

STEVEN P. ROTH, ESQUIRE
ROSENN, JENKINS & GREENWALD, L.L.P.
15 SOUTH FRANKLIN STREET
WILKES-BARRE, PA 18711

GREGORY LYONS, ESQUIRE
OFFICE OF THE US TRUSTEE
228 WALNUT STREET, 11TH FLOOR
PO BOX 969
HARRISBURG, PA 17108-0969

Dated: July 29, 2003

Catherine M. Sisk
Judicial Assistant to Judge John J. Thomas

MDPA-CERTMAIL.DOT-REV7/94