IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER ELEVEN |
| | : | |
| | : | |
| MACHNE MENACHEM, INC., | : | BANKRUPTCY NO.: 5-01-bk-04926 |
| | : | {**Nature of Proceeding**: Debtor's Objection |
| | : | to Allowance of Claim [of Yaakov Spritzer] |
| DEBTOR | : | (Doc. #365/#366)} |

# OPINION

As the bankruptcy case winds down, one of the final issues remaining to be decided focuses on the Proof of Claim filed by Yaakov Spritzer (sometimes hereinafter referred to as Claimant).

A brief summary of the history of the Debtor might be helpful.

Machne Menachem, Inc., hereinafter Machne or Debtor, was the brain child of a small group of Hasidic men from their Brooklyn, New York community. Four members of this community convened with the purpose of starting a summer camp for boys in a rural location away from the distracting events of the city. In 1995, a corporation, Machne Menachem, Inc., was formed under the New York Not-For-Profit Corporation Law (N-PCL) by these four individuals for the purpose of advancing this camp. By all accounts, the camp was received very enthusiastically. While well-attended, it did suffer from significant economic problems. It was not long after that these economic issues manifested itself in a rift between rival factions of the community. This disagreement found itself before the District Court for the Southern District of New York. On October 21, 2002, that District Court issued an Opinion which included findings of fact essential to its conclusions and, I find, helpful in discussing the outcome of the litigation

before me.[1] *Machne Menachem, Inc. v. Hershkop*, 237 F.Supp.2d 227 (E.D.N.Y. 2002).

The Debtor was incorporated on July 21, 1995. *Id.* at 230. The founding directors were Mendel Herschop (sometimes spelled Hershkop), Shmuel Heber, Yaakov Spritzer, and Yosef Goldman. *Id.* at 230. Initially, Machne leased a property in NewYork state to conduct its summer camp. Claimant Exhibit 3. On May 20, 1996, real estate in the Pocono region of Pennsylvania was purchased by the Debtor corporation. Claimant Exhibit 6. It was fairly apparent from the start that funding the operation would be a problem. While the majority of directors thought that the shortfall could be managed with donations and camp fees, it soon became apparent that Spritzer saw the only practical solution as an advance of funds, which he accommodated with a stream of personal funds deposited into Machne from mid 1995 through 2001. Claimant Exhibit 2. It was during this time period that Spritzer virtually usurped total control of the Debtor. *Machne Menachem, Inc. v. Hershkop,* 237 F.Supp.2d 227 (E.D.N.Y., 2002) ("Spritzer's testimony regarding the transfer of money and the cashing of checks between the Corporation and his own company, A-1 Merchandising, without any board involvement compel the conclusion that Spritzer had indeed, arrogated to himself the affairs of the Corporation.") *Id*. at 236.[2] It was the stream of funds from Spritzer that formed the basis of his Proof of Claim filed in this case. While many of the deposits made by Spritzer were from Spritzer's personal funds, some came from his solely-owned corporation, A-One Merchandising

---

[1] Section 27 of the Restatement (Second) of Judgments discusses issue preclusion as follows. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982).

[2] The 2002 Opinion of the District Court concluded that, under New York law, the original four directors of the Debtor remained in office as the only legitimate directors of this corporation during all relevant time periods. *Id.* at 239 and 242.

Corp. (A-One); some funds were run through The Schreiber Family Charitable Foundation; and some were run through Spritzer's joint account with his spouse. To memorialize these advances, shortly before bankruptcy, Spritzer caused to be executed a Mortgage in his favor from Machne encumbering the real estate for $1,000,000. Claimant Exhibit 1.

On December 6, 2001, on behalf of the Debtor, Spritzer filed the Chapter 11 which lends jurisdiction to this Court. With that filing, the controversy that has mired this corporation in the New York court spilled over into this Bankruptcy Court in Pennsylvania. Nevertheless, Spritzer's control of the corporation vanished when the original directors were confirmed by the District Court on October 21, 2002, and Spritzer was effectively ousted from control by the majority of directors. See attachment to Doc. #63. That did not, however, end Spritzer's role in the bankruptcy. As a creditor of Machne by reason of his Proof of Claim, Spritzer proposed a Plan which was eventually confirmed and provided that Machne's real estate would be purchased by a new non-profit corporation under Spritzer's direction. Doc. #617. The consideration for that sale would be held by an independent agent to be disbursed pursuant to the terms of the Plan.

The only issue that remains is the disposition of the current Objections by the Debtor to the claims of Spritzer and A-One. Doc. #365, 366 (duplicate filing), and 382. The Objection against A-One was overruled since there was no claim filed by A-One, merely an entry on the schedules which was always subject to amendment by the Debtor.

The Debtor's Objection against the Spritzer claim, among other grounds, denies the indebtedness, asserts the lack of corporate authorization, and argues that any funds provided were donations. Doc. #365.

The Proof of Claim filed by Yaakov Spritzer is prima facie evidence of the validity of the debt. Federal Rule of Bankruptcy Procedure 3001(f). It is in the amount of $1,012,454. It attaches approximately 120 pages of supporting documents. A review of that claim, together with Spritzer's testimony, leaves little doubt that a significant amount of Spritzer or Spritzer controlled funds went into Machne. Having said that, there was a sparse presentation of corporate books and records to either corroborate Spritzer's history of so-called "loans" or the Debtor-Objector's allegations of inappropriate personal use by Spritzer of corporate funds. What was apparent is that Yaakov Spritzer meticulously itemized a significant amount of the advances he had made to the Debtor or its employees or vendors. Attached to the Proof of Claim are copies of cancelled checks from accounts controlled by Yaakov Spritzer and his spouse, A-One Merchandising Corp., and from the Debtor itself in an apparent effort to demonstrate the legitimacy of the infusion into, and the outflow from the Debtor. Also attached were copies of numerous invoices from vendors and a petty cash ledger. Filed as a separate exhibit at trial were copies of a number of Machne deposit slips. Claimant Exhibit 5. Some of those deposit slips are marked "loan."

The essence of Debtor's Objection to the claim is that there were no loans from Spritzer to the Debtor - that if there were advances, they either were not authorized or were merely donations for which no repayment was anticipated.

An analysis of the documentation would be in order so as to properly characterize the advances. While the normal exercise regarding a for-profit entity would involve a determination whether a given advance is a loan or a capital investment, the fact that the Debtor is a non-profit corporation alters those options so as to require that I weigh whether the advances were loans or

donations to a very worthy venture. In making that review, I find the Third Circuit case of *Cohen v. KB Mezzannie Fund II, (In re SubMicron Systems Corp.)*, 432 F.3d 448 (3d Cir. 2006) to be of significant assistance.

In *SubMicron*, the plan administrator for a Chapter 11 estate brought an adversary proceeding seeking to recharacterize an insider's claim from debt to equity. The Court's analysis explained that the term recharacterization was "misleading" and that the task is better identified as a study of the original intent of the parties, relying on *Citicorp Real Estate, Inc. v. PWA, Inc. (In re Georgetown Bldg. Assocs. Ltd. P'ship)*, 240 B.R. 124, 137 (Bankr.D.D.C. 1999) ("The debt-versus-equity inquiry is not an exercise in recharacterizing a claim, but of characterizing the advance's true character.") and *In re Cold Harbor Assocs.*, L.P., 204 B.R. 904, 915 (Bankr.E.D.Va. 1997) ("Rather than recharacterizing the exchange from debt to equity, or subordinating the claim for some reason, the question before this Court is whether the transaction created a debt or equity relationship from the outset."). *SubMicron, supra.* at 455 n.7.

The implication is obvious that I should first turn my attention to the analysis of just what the relationship was between Spritzer and the Debtor during these relevant time periods.

The record is fairly replete with indications that Spritzer, as one of four directors, ran the Debtor corporation on his own with little input from the other directors. That is not to say that Spritzer was the sole manager, since others were brought in by Spritzer, from time to time, to assist in camp operations. As indicated, there was sparing use of corporate records, although Claimant Exhibit 1 included an undated purported Resolution memorializing and authorizing a $1,000,000 mortgage to an unidentified entity. The meeting at which the Resolution was

ostensibly passed was referenced as being held on September 24, 2001. The Mortgage to Spritzer was dated November 6, 2001, about one month before the Debtor's Chapter 11 filing. I will note that by 2001, the bulk of Spritzer's advances had already occurred. The 2001 corporate meeting appears to be of little significance since, as found by District Judge Glasser, the only true representatives of the Debtor were its four directors: Spritzer, Goldman, Herschop and Heber. There was no indication that Goldman, Herschop or Heber were notified of that meeting.

Spritzer's advances are identified in chronological order beginning on page 17 of Claimant Exhibit 1. That document identifies approximately 125 separate transactions taking place between 1995 and 2001 totaling close to $1,000,000. Added to that total is almost $200,000 interest assessed against the Debtor. While Spritzer's religious faith prohibits the charging of interest, Spritzer explains that he merely billed the Debtor for the interest that he was charged by his bank for loans he obtained. A review of the documents utilized as court exhibits reveals a mere handful that bear the notation of "loan." I have come across the word "loan" on four checks[3] and approximately 30 deposit slips. Claimant Exhibit 5. One deposit slip was inexplicably marked "Schreiber loan." Claimant Exhibit 5 at page YS-130. The only other document advanced relating to a debtor-creditor relationship was the undated resolution authorizing a mortgage, hereinbefore referred to and apparently drafted after September 2001 and signed by Meir Aaron Schreiber as "Vice President/Treasurer." Meir Schreiber executed the resolution notwithstanding Judge Glasser's finding that there was no evidence that "a president, vice president, secretary or treasurer [were] ever elected or appointed by the board or approved

---

[3] Proof of Claim, Attachment YS-110 ($25,000): YS-111 ($5,000); YS-124 ($10,000); all made payable to Debtor from A-One Merchandising; and Attachment YS-86 ($90,000) payable to The Schreiber Family Charitable Foundation, also from A-One Merchandising Corp.

by the board." *Machne Menachem , Inc. v. Hershkop*, 237 F. Supp.2d at 240. Supplementing this documentation was Yaakov Spritzer's testimony which indicated that funds were advanced as needed, and, later on in the relevant tax year, he attached a label to the transactions either as a donation or a loan as would be helpful to his personal tax status. Cross examination by Spritzer's counsel suggested that all advances were loans when made but some "loans" were forgiven at a later time.

*SubMicron* points to multiple factors to consider in determining whether a transaction was a loan. Among those factors were the details of any instruments exchanged. In this case, there were none given contemporaneously - no due date, no interest rate, no repayment schedule, no default terms. *SubMicron* suggested that one indicator might be the expectancy that the debt would be repaid with interest regardless of the Debtor's fortunes. Here there was no such expectancy indicated. Whether the lender sat on the board of the corporation may also be a factor in determining that a transaction was not a loan. Here, Spritzer most certainly sat on the board.

"[T]he determinative inquiry in classifying advances as debt is the intent of the parties as it existed at the time of the transaction." *In re SubMicron Systems Corp.*, *supra.* at 457. Typically, that corporate intent could be culled from a resolution of the board. There was no contemporaneous resolutions in this case. Two of the board members testified on behalf of the Debtor. Mendel Hershkop stated that he never knew Spritzer put money into the Debtor. Yosef Goldman testified that he knew of no corporate documents authorizing loans to the Debtor. The only indication of a contrary intent at the time of the transaction comes from Spritzer himself and that testimony was equivocal at best.

The evidence is fairly compelling that, based on the *SubMicron* standards, only a small portion of the advances could qualify as loans.

Pivotal to the inquiry, though, is the undisputed fact that a majority of the legitimate directors instructed Spritzer to discontinue further activities on behalf of the Debtor. Debtor Exhibit 1. In fact, Debtor Exhibit 1 purports to be "certified minutes" as to resolutions of three of the four board members directing Spritzer to take no further action on behalf of the corporation. That document is dated March 17, 1997 and was mailed to Spritzer the following day. Debtor Exhibit 2. Presumably, that would include borrowing money on behalf of the Debtor. Since Spritzer continued to advance funds to the Debtor after that date, aware of the position of the majority directors, a fair conclusion would be that Spritzer made those advances at his peril. If funds were advanced to an unwilling debtor under that circumstance, then there would be a strong assumption that such advance was a gift. I find that such is the case for all advances made by Spritzer after the date of the 1997 resolutions by the majority board members, which directed Spritzer to forego any further administrative role. This would certainly include accepting "loans" on behalf of the Debtor.

The conclusion becomes inescapable that these transfers were gifts since one cannot impose a loan on an unwilling obligor.

I further note that the Debtor, Machne Menachem, Inc., is a corporation organized under the Not-For-Profit Corporation Law of New York. In turning to that statutory guidance in adjudicating the relevant issues between Spritzer and the Debtor, I find that Section 715 states, as follows:

## § 715. Interested directors and officers

1. (a) No contract or other transaction between a corporation and one or more of its directors or officers, or between a corporation and any other corporation, firm, association or other entity in which one or more of its directors or officers are directors or officers, or have a substantial financial interest, shall be either void or voidable for this reason alone or by reason alone that such director or directors or officer or officers are present at the meeting of the board, or of a committee thereof, which authorizes such contract or transaction, or that his or their votes are counted for such purpose:

   (1) If the material facts as to such director's or officer's interest in such contract or transaction and as to any such common directorship, officership or financial interest are disclosed in good faith or known to the board or committee, and the board or committee authorizes such contract or transaction by a vote sufficient for such purpose without counting the vote or votes of such interested director or officer; or

   (2) If the material facts as to such director's or officer's interest in such contract or transaction and as to any such common directorship, officership or financial interest are disclosed in good faith or known to the members entitled to vote thereon, if any, and such contract or transaction is authorized by vote of such members.

   (b) If such good faith disclosure of the material facts as to the director's or officer's interest in the contract or transaction and as to any such common directorship, officership or financial interest, is made to the directors or members, or known to the board or committee or members authorizing such contract or transaction, as provided in paragraph (a), the contract or transaction may not be avoided by the corporation for the reasons set forth in paragraph (a). *If there was no such disclosure or knowledge*, or if the vote of such interested director or officer was necessary for the authorization of such contract or transaction at a meeting of the board or committee at which it was authorized, *the corporation may avoid the contract or transaction unless the party or parties thereto shall establish affirmatively that the contract or transaction was fair and reasonable as to the corporation at the time it was authorized by the board, a committee or the members.* .

   (c) Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board or of a committee which authorizes such contract or transaction.

   (d) The certificate of incorporation may contain additional restrictions on

contracts or transactions between a corporation and its directors or officers or other persons and may provide that contracts or transactions in violation of such restrictions shall be void or voidable.

(e) Unless otherwise provided in the certificate of incorporation or the by-laws, the board shall have authority to fix the compensation of directors for services in any capacity.

(f) The fixing of salaries of officers, if not done in or pursuant to the by-laws, shall require the affirmative vote of a majority of the entire board unless a higher proportion is set by the certificate of incorporation or by-laws.

McKinney's N-PCL § 715. (Emphasis ours)

While § 715 is not a model of clarity, it does suggest that transactions occurring between directors and their non-profit corporation should be carefully scrutinized. It further suggests that there are circumstances under which the transaction may be either void or voidable.

Of course, if the transactions between Spritzer and the Debtor were no more than that of donor-donee, the Proof of Claim cannot stand and no reference to § 715 would be necessary.

As set forth in the statute, not every transaction that takes place between a director and a non-profit corporation is void or voidable. § 715(a). A further reading of the statute indicates that in a transaction between a director and the non-profit corporation, there must be some level of authorization by the board, pre-transaction or post-transaction, tacit or otherwise. The testimony has been consistent here that the board members recognized in Judge Glasser's opinion, other than Spritzer himself, never authorized or encouraged Spritzer's alleged loans to the corporation. Debtor's Exhibits 1 and 2 demonstrate the board's resolve that Spritzer was to take no action without the board's approval. Furthermore, there is no evidence of subsequent ratification by the board. In fact, the Debtor's Objection to the Spritzer claim memorializes the position of the legitimate directors that any alleged loans by Spritzer should be voided, having

not been authorized nor ratified by the board.

This discussion takes me full circle to a preliminary issue raised by the Claimant when it moved for Judgment on Partial Findings under Federal Rule of Civil Procedure 52(c), made applicable by Federal Rule of Bankruptcy Procedure 7052. Such Motion was made at the conclusion of Debtor-Objector's case and the Claimant argued that the prima facie validity of the Proof of Claim was not rebutted. I took that request under advisement. Rule 52(c) reads:

> Judgment on Partial Findings. If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

Federal Rule of Civil Procedure 52.

A judgment on partial findings is a tool utilized to conserve time by making it unnecessary to hear additional evidence when the results would not be any different. 9 Moore's Federal Practice 52-124, ¶ 52.50[2]. It allows a judgment to be entered after the affected party has been fully heard. *Id*. at 52-125, ¶ 52-50[3].

The testimony of the Debtor's witnesses consistently took the position that Spritzer was not authorized to loan money to the corporation. I will deny the request for partial judgment because of the non-profit status of the Debtor and a direction in § 715 of the New York Not-For-Profit Corporation Law that authorization of, or ratification by, the board is essential to escape voidability issues. Debtor's Objection is the unequivocal statement that the board of directors of the Debtor did not authorize and will not ratify the alleged insider loan.

Spritzer's testimony adds no support to the securing of authorization or ratification by the

board, implied or otherwise, or a waiver thereof. He does introduce a partial copy of the Injunction Order of District Judge Glasser issued July 1, 1997. Claimant Exhibit 26. That Order specifically enjoins various defendants, including the majority of the Debtor's board of directors, from "interfering, in any way, with the administration of the affairs of the . . . camp." I find that this Order hardly excuses the Claimant from compliance with the Not-For-Profit Corporation Law of New York. The insider advance, if such transfers were loans, in the absence of authorization or ratification, is void or voidable.

To summarize the facts: Spritzer's advances to the Debtor occurred between May 12, 1995 and December 6, 2001. Claimant Exhibit 1, page YS18. A majority of the recognized board of directors removed Spritzer from an active role in camp management on March 17, 1997. Debtor Exhibit 1. District Judge Glasser, by Order dated July 1, 1997, enjoined "interference" with camp administration by the three directors other than Spritzer. Claimant Exhibit 26. By Opinion dated October 21, 2002, Judge Glasser recognized Joseph Goldman, sometimes referred to as Yosef Goldman, Mendel Hershkop, and Samuel Heber, together with Yaakov Spritzer, as legitimate directors of the camp. At a duly scheduled meeting of the board of directors held on November 25, 2002, Yaakov Spritzer was effectively removed from camp administration. Attachment to Doc. #63.

From this chronology, Spritzer's administration of Machne Menachem, after March 17, 1997, was in contravention of the board's direction. Funds advanced by Spritzer to the Debtor after that date were done so at his peril. This would be true despite the injunction issued by Judge Glasser, at Spritzer's request. The injunction may have barred the majority directors from camp administration, but it did not legitimize Spritzer's management of Machne Menachem.

[K:\Cathy\Opinions-Orders filed 2010\5-01-bk-04926_ Machne_Menachem_Spritzer_Proof_of_Claim.pdf]   12

Case 5:01-bk-04926-JJT   Doc 837   Filed 03/04/10   Entered 03/04/10 14:39:25   Desc
Main Document    Page 12 of 14

Nevertheless, approximately $350,000 of Spritzer's advances occurred before the March 17, 1997 resolution. These transactions should be scrutinized under § 715 of the New York Not-For-Profit Corporation Law, as well as the *SubMicron* decision. Since there was no pre-advance disclosure to the board prior to funds being transferred, § 715(b) would apply.

Spritzer, quite logically, argues that, even if the transactions are void or voidable, the Debtor would still be indebted to Spritzer for funds loaned, albeit without interest. He argues that rescinding the transaction does not mean Spritzer should lose the right to reimbursement. I believe a fair parallel can be found in the Truth in Lending (TILA) rescission provisions wherein an obligor is, in fact, required to return the principal loan upon rescission of the mortgage and the compliance of the lender with certain requirements. 15 U.S.C. § 1635(b). Claimant's point is well taken. Having said that, however, it would be inconceivable to me to be able to foist a loan on an unwilling Debtor.

Of the approximate $350,000 advanced by Spritzer prior to March 17, 1997, I can only point to the following advances as being supported by any contemporaneous written evidence that it was intended to represent a loan.

1. Deposit slip dated 7/26/1996 in the amount of $20,000. Claimant Exhibit 5, page YS128.

2. Deposit slip dated 7/31/96 in the amount of $50,000. Claimant Exhibit 5, page YS129.

3. Deposit slip dated 1/17/97 in the amount of $6,000. Claimant Exhibit 5, page YS130.[4]

Applying the indicators set forth in the *SubMicron* case, I am satisfied that those contemporaneous notations support Claimant's argument that these advances were loans. Just as telling is the absence of notations on other advances suggesting that no repayment was anticipated and the advancements were donations. It is for these reasons that I conclude that the claim of Yaakov Spritzer should be allowed as an unsecured claim in the amount of $76,000. To the extent such claim exceeds that amount, it is disallowed.

My Order will follow.

By the Court,

Date: March 4, 2010

John J. Thomas, Bankruptcy Judge
(CMS)

*This opinion is electronically signed and filed on the same date.*

---

[4] A fourth deposit slip from this time period (Claimant Exhibit 5, page 130) bears the notation "Schreiber Loan" and will not be considered a loan from Spritzer.